UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FRANCISCO ORTIZ, on his own
behalf and others similarly situated,

    Plaintiff,

v.                           CASE NO.: 8:12-cv-01998-MSS-TBM

NAC DYNAMICS, LLC., a Florida
Limited Liability Company, and
TIMOTHY NEUBERT, individually,

    Defendants.
_____/

### PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND INCORPORATED MEMORANDUM OF LAW

Pursuant to the Federal and Local Rules of Civil Procedure, Plaintiff, FRANSISCO ORTIZ ("Ortiz" or "Plaintiff") moves this Court for an award of attorneys' fees[1], and states as follows:

### SUMMARY OF THE ARGUMENT

Plaintiff is the prevailing party in this matter because, as a result of the prosecution of his lawsuit, he secured a settlement that awards him arguably all of the unpaid wages he is owed.[2]

Of importance to the foregoing and the necessity of this Motion, is that this is not a case where Defendants simply "rolled over" and tendered payment upon filing of the lawsuit.

---

[1] Although Defendants have yet to pay same, the Parties have separately reached an agreement regarding Defendants reimbursement of Plaintiff's costs incurred in the prosecution of the case.

[2] This case concerned claims of unpaid overtime wages that were both documented (on-the-clock) and undocumented (off-the-clock). As explained further herein, Plaintiff received damages in excess of his liquidated on-the-clock damages claimed as a result of the settlement. However, the parties continue to disagree about the amount and viability of Plaintiff's off-the-clock claims.

Much to the contrary, this is a case where Defendants drew a "line in the sand," litigated the case as aggressively as possible, and refused to entertain discussions regarding settlement, until the dust had settled. To that end, Defendants: (a) asserted strenuous objections and numerous affirmative defenses to Plaintiffs' alleged entitlement to overtime in their Answer[3]; (b) filed numerous motions prior to any meaningful discovery, including a motion for summary judgment, motion to strike and motion for sanctions (all of which were denied); and (c) rejected Plaintiff's numerous attempts at settlement, until such time as the Court had denied all of their aforementioned Motions.

In fact, it was not until the dust settled and the Court denied all three of Defendants' aforementioned Motions, that Defendants made their first attempt to resolve this case—regarding admittedly relatively small sums—without further litigation. Moreover, due to undersigned's zealous efforts legitimately prosecuting the case, and defending against Defendants numerous Motions, Plaintiff ultimately accepted a settlement that paid him damages in excess of his documented overtime hours (and an equal amount as liquidated damages).

Despite, undersigned counsel's good faith conferral with Defendants' counsel regarding the issue of attorneys' fees, considering the results achieved, the parties have been unable to reach agreement on same. Plaintiffs thus file the subject Motion necessarily, pursuant to the Court's Endorsed Order dated July 17, 2013. *See* D.E. 44.

---

[3] Although not apparent from the face of Defendants' Answer, Defendants also claimed throughout the case that Plaintiff had been ***over***paid, because they claimed he received pay for otherwise non-compensable travel time throughout the periods at issue.

## **RELEVANT FACTS AND PROCEDURAL HISTORY**

1.     This case arises from Defendants' violation of the Fair Labor Standards Act ("FLSA") due to their failure to pay Plaintiff overtime for all overtime hours worked. Specifically, Plaintiff alleges that the Defendants manipulated the time records in many workweeks, prior to submitting same to their third-party payroll company, so that it appeared Plaintiff worked fewer overtime hours than he actually worked (and recorded).

2.     Therefore, Plaintiff commenced the instant lawsuit on or about September 4, 2012, by filing the Complaint.[4]  *See* D.E. 1.

3.     Defendants joined issue by filing their Answer and Affirmative Defenses on or about October 1, 2012.  *See* D.E. 6.  Significantly, in their Answer Defendants not only denied all of Plaintiff's allegations (despite proof of same in the form of their own documents), but also asserted ten (10) different affirmative defenses.  *See id.*

4.     Thereafter on October 4, 2012, the Court entered its FLSA Scheduling Order. *See* D.E. 7.  Significantly, the FLSA Scheduling Order required the parties to serve documents relevant to Plaintiff's claim on one another by October 25, 2012; required Plaintiff to answer the Court Interrogatories by November 15, 2012; and mandated that the parties engage in settlement negotiations prior to any discovery in the case.  *See id.*

5.     On October 18, 2012—a week prior to the deadline to exchange their records with Plaintiff, and prior to any discovery in the case—Defendants filed their Motion for Summary Judgment.  *See* D.E.s 12 and 13.

---

[4] Defendants' entire Motion for Sanctions (and its Motion for Summary Judgment) were based on their erroneous contention that the lawsuit claims Defendants **never** paid any overtime.  However, there is no such factual allegation in the Complaint.  *See* Motion for Sanctions, Motion for Summary Judgment; compare Complaint.  Instead, Plaintiff asserts (and the records unequivocally show) that Defendants failed to pay Plaintiff overtime premiums for **all** hours of overtime he worked.  *See* D.E. 18.

6. Subsequently, Plaintiff filed his Memorandum in Opposition to the Defendants' Motion for Summary Judgment ("Opposition") on November 1, 2012. *See* D.E. 14. However, because—on the face of the records Plaintiff already had—it was clear that Defendants had not paid Plaintiff for all overtime hours worked in the paychecks that corresponded to Plaintiff's timesheets, Plaintiff's Memorandum in Opposition largely focused on that issue. *See id.*

7. After filing Plaintiff's Opposition, Plaintiff and his undersigned counsel re-reviewed all of the records in his possession in detail and also compared them to the records now available from Defendants, so that they could draft Plaintiff's Answers to Court Interrogatories. Such review took over 10 hours and required that Plaintiff and his undersigned counsel speak multiple times, because Defendants' records were quite confusing.

8. In reviewing the records, it became clear that Defendants had paid Plaintiff for *some* of the overtime hours Plaintiff and undersigned counsel initially believed that they had not (typically in the pay period after the pay period correlating with the dates on the timesheets). However, equally clear was that ***Defendants did not pay Plaintiff for all of the overtime hours*** Plaintiff worked.[5]

9. As such, Plaintiff filed his Answers to Court Interrogatories on November 14, 2012, but the Answers to the Court Interrogatories contained an updated calculation of damages based on the more extensive records now reviewed. *See* D.E. 16.

10. After discussing the revised damage calculations at length with counsel for the

---

[5] Because of the necessity of filing an Amended Declaration of Francisco Ortiz, Plaintiff's undersigned counsel is not seeking to be paid for time spent drafting the original (incorrect) Declaration herein.

Defendants, Plaintiff's undersigned counsel exchanged a chart specifically itemizing the documented overtime hours worked that were not paid.[6]  Further, Plaintiff and his undersigned counsel filed an Amended Declaration in line with his revised damages calculation and the facts that their continued investigation had revealed.  *See* D.E. 18.

11. As demonstrated by Plaintiff's Amended Declaration, as well as the exhibits attached thereto and those attached to the "Corrected" Affidavit of Timothy Neubert (*see* Exhibit 13), there is clear proof that Defendants failed to pay Plaintiff for all of his overtime hours worked, as required by the FLSA.

12. In spite of the clear evidence of their FLSA violations, and Plaintiff's request that they do so, Defendants refused to withdraw their Motion for Summary Judgment.  Instead, Defendants' "doubled down" and filed a Motion for Sanctions and a Motion to Strike (the Amended Declaration).  *See* D.E.s 15 (Motion for Sanctions), 20 (Motion to Strike).

13. By Order entered December 6, 2012, this Honorable Court denied Defendants' Motion for Sanctions.  *See* D.E. 23.

14. Subsequently, by Order dated February 14, 2013, Magistrate McCoun denied Defendants' Motion to Strike.  *See* D.E. 31.

15. The following day, Magistrate McCoun issued a Report and Recommendation, recommending that the Defendants' Motion for Summary Judgment be denied, which was ultimately adopted in full by Order of this Court dated March 8, 2013.  *See* D.E.s 32, 35.

**Defendants Rebuffed Plaintiff's Attempts to Discuss Settlement at All Times Prior to the Court's Orders Denying Defendants' Three (3) Ill-Advised Motions**

16. Significantly, despite numerous attempts by Plaintiff's undersigned counsel to

---

[6] There are also off-the-clock hours that Plaintiff worked during the relevant 3 year statute of limitations, however there is no such documentation for those hours for obvious reasons.

5

resolve this case, prior to expending time—largely defending Defendants' ill-advised aforementioned Motions—Defendants refused to make any offer to settle the case, until after all three (3) Motions had been denied. Rather, Defendants engaged in the most aggressive litigation tactics they had at their disposal, necessitating Plaintiff to respond in kind. *See, e.g.,* Emails between Counsel for the Parties collectively attached hereto as **EXHIBIT A**.

17. To that end, Defendants rebuffed Plaintiff's attempts to reach a reasonable settlement at least three (3) times, including at the Court-ordered settlement conference, during which Defendants refused to make any offer whatsoever. *See id.*

18. Following the three (3) orders that denied Defendants' three (3) motions, on March 8, 2013, Plaintiff again contacted Defendants' counsel in an effort to resolve the case, and *for the first time*, Defendants responded that they were interested in trying to resolve the case. *See* Emails collectively attached hereto as **EXHIBIT B**.

19. Thereafter, the parties moved quickly and negotiated a preliminary settlement of Plaintiff's claims on April 10, 2013 (s*ee* D.E. 36), which settlement was approved by the Court as fair and reasonable, by Order dated June 10, 2013. *See* D.E. 40.

20. Under the settlement, Plaintiff received a total $1,500.00 ($750.00 in unpaid wages and $750.00 in liquidated damages). *See* Settlement Agreement, attached hereto as **EXHIBIT C,** ¶ 3(a). Significantly, the parties agree that this represents all overtime wages possibly owed to Plaintiff, based on the overtime hours he worked for Defendants. *See id.*

21. Pursuant to the parties' settlement, the Parties agreed that the Court would determine Plaintiff's counsel's reasonable attorneys' fees and costs. *See id.*, ¶ 3(b).

### Plaintiff's Recovery

22. The Court has previously deemed Plaintiff's recovery under the settlement to be a

fair and reasonable compromise of a bona fide dispute. *See* D.E. 40.

23. Indeed, in light of the fact that Plaintiff recovered in excess of his fully liquidated documented unpaid overtime damages, Plaintiff's recovery should be viewed as stellar.

24. Specifically, Defendants contested every element of Plaintiff's claims throughout this litigation. To that end, rather than attempt to resolve this relatively modest claim at the outset, Defendants instead elected the employ the most aggressive litigation tools available to them, and filed three (3) successive motions, prior to any discovery in the case.

25. Significantly, prior to the Orders denying Defendants motions, the Defendants rebuffed every overture to resolve the case made by Plaintiff and his counsel, repeatedly stating that they would not make any offer to settle the case. *See* Exhibit B.

26. Given all of these facts, the settlement procured for Plaintiff as a result of the undersigned's efforts can be said to be an excellent one. Moreover, due to Defendants' posture in litigating the case—without making any offer at all—all time that Plaintiff's undersigned counsel expended in pursuing Plaintiff's claims, by definition, was reasonable and should be compensated.

## MEMORANDUM OF LAW

### I. Plaintiff is the Prevailing Party as She Secured Relief on Her Claims- She Therefore, is Entitled to Payment of Their Attorneys' Fees and Costs.

29 U.S.C. §216(b) authorizes an award of attorney's fees to the prevailing plaintiff in any proceeding to enforce the overtime and minimum wage provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq*. This was a proceeding to enforce the provisions of the FLSA.

A prevailing plaintiff's attorney's fee is mandatory. *See Weisel v. Singapore Joint*

7

*Venture, Inc.,* 602 F 2d 1185 (5th Cir. 1979). In order to have "finally prevailed," a party must have obtained either a judgment on the merits or reached a settlement agreement that was enforced through a consent decree. *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Department of Health and Human Resources*, 532 U.S. 598, 607, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). Here, the parties have reached a settlement in which they stipulate that Plaintiff is the prevailing party, for the purposes of an award of attorneys' fees. *See* Settlement Agreement, ¶ 3(b).

The Eleventh Circuit has ruled that ". . . attorney fees are an ***integral part of the merits of FLSA cases and part of the relief sought therein***." *Shelton v. Ervin*, 830 F.2d 182, 184 (11th Cir.1987)(emphasis added). The FLSA is a remedial statute that " 'has been construed liberally to apply to the furthest reaches consistent with congressional direction.' " *Johnston v. Spacefone Corp.,* 706 F.2d 1178, 1182 (11th Cir.1983) (quoting *Mitchell v. Lublin, McGaughy & Assocs.,* 358 U.S. 207, 211, 79 S.Ct. 260, 264, 3 L.Ed.2d 243 (1959)). Courts have long recognized that to achieve the remedial goal of the FLSA, attorney's fees must be awarded. Awarding employees their attorney's fees is necessary to "provide an adequate economic incentive for private attorneys" to take FLSA cases and "thereby to ensure competent legal representation for legitimate claims." *Odil v. Evans*, 2005 WL 3591962 *3 (M.D. Ga. 2005). The vast majority of FLSA claims deal with working class people who ordinarily would not have the financial resources to pay an attorney to pursue their overtime or minimum wage claims. This is especially true given that most FLSA claims do not involve significant amounts of money and often times the attorney's fees are more than the FLSA claim itself. Defendants may argue that the amount recovered was lower than the amount sought, and thus, attorneys' fees and costs should be reduced. However, this is incorrect.

"Fee awards, however, should not simply be proportionate to the results obtained by the Plaintiff." *James v. Walsh Depot Holdings, Inc.*, 489 F.Supp.2d 1341, 1347 (S.D. Fla. 2007) (citing *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986)). Moreover, as the Eleventh Circuit has recognized, "[t]he Supreme Court has instructed us that there is a 'strong presumption' that the lodestar figure, without any adjustment, is the reasonable fee award." *Kenny A. ex rel. Winn v. Perdue*, 532 F.3d 1209, 1220 (11th Cir. 2008)(quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). Moreover, where the amount of attorneys fees incurred by Plaintiff was the direct result of Defendants' aggressive "shoot first ask questions later" tactics in litigating this case, all time Plaintiff's undersigned counsel incurred in litigating the instant claim was—by definition—reasonable and necessary. *See James,* 489 F.Supp.2d at 1353-54 ("the Defendant has vigorously defended this case. Such a vigorous defense necessarily requires the Plaintiffs counsel to expend more hours and drives up the ultimate charge of attorneys fees billed to a non-prevailing defendant.")(citing *Rice v. Sunrise Express, Inc*., 237 F.Supp.2d 962, 977 (S.D. Ind. 2002)).

    A.    <u>**Amount of Attorney's Fees and Costs**</u>.

In order to calculate the fees that an attorney is entitled to, the court employs the "lodestar method" and multiplies the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. *Louisiana Power & Light Co. v. Kellstrom,* 50 F.3d 319, 324 (5th Cir.1995). The court then considers whether the lodestar figure should be adjusted upward or downward depending on the circumstances of the case. *See id.* Adjustments are to be made as necessary in the particular case. *See Blum v. Stenson,* 465 U.S. 886, 888 (1984); *Kreager v. Solomon & Flannagan, P.A.,* 775 F.2d 1541 (11th Cir.

1985); *Hendrick v. Hercules, Inc.,* 658 F.2d 1088 (5th Cir. 1981).

In considering a fee under a lodestar calculation, courts look to twelve factors, known as the *Johnson* factors, after *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974)[7]. The factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See id.* at 717-19.; s*ee also Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988)(extensive discussion by the 11th Circuit of the *Johnson* factors and awarding fees).

B.   **Application of the Johnson Factors**

Counsel for prevailing plaintiffs should be paid as is traditional with attorneys compensated by a fee paying client for all time reasonably expended on a matter. *See Blanchard v. Bergeron,* 489 U.S. 87, 91 (1989).  The party seeking attorneys' fees bears the

---

[7] In evaluating the *Johnson* factors, courts have recognized that attorneys employed at larger firms, with the requisite larger overhead and/or those that handle nationwide class/collective actions generally should be awarded higher hourly rates than those at smaller firms, handling individual plaintiff cases.  *See Davis v. Footbridge Engineering Services, LLC*, 2011 WL 3678928, at *4 (D. Mass. Aug. 22, 2011); *LV v. New York City Dept. of Educ*., 2010 WL 1244287, at *3 (S.D.N.Y. March 31, 2010)(recognizing that the size of the law firm, "is one guidepost for the Court in assessing rates in a class action…"); *Heng Chan v. Sung Yue Tung Corp*., 2007 WL 1373118, at *3 (S.D.N.Y. May 8, 2007)(Noting where Plaintiff prevailed on a FLSA claim that, "it is appropriate to award a relatively high hourly rate that reflects the institutional resources that made it possible for these attorneys to take on the case.").

burden of documenting the appropriate hours expended. *See Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir.1995).

First, as to the time and labor required for this litigation, attached to this Motion as Composite **EXHIBIT D** is the Declaration of Andrew Frisch, in which the undersigned provides the Court with the requisite itemized statement of the time and labor expended on this case. The Declaration contains a certification that the Declarant has fully reviewed the time records that are the supporting data for the Declarant and that the hours claimed are well grounded in fact and justified. The Declaration of Andrew Frisch confirms the total hours incurred in litigating this case to date. Time sheets confirming the same have been attached and the entries differentiate the legal work that was completed in this matter. The total hours up to the filing of this Motion are 55.50 attorney hours and 13.40 paralegal hours totaling fees in the amount of $19,636.50.

Second, as explained above, the novelty and difficulty of this case was different than that a "run of the mill" wage and hour case procedurally. While the case should have been straight forward, at least in regard to Defendants' failure to properly compensate Plaintiff for his documented overtime hours at issue, Defendants created numerous hurdles to the reasonable resolution of the case, all of which were somewhat novel, by way of their 3 successive motions—all of which were ultimately denied. Indeed, Defendants even sought sanctions against Plaintiff's undersigned counsel, in an effort to scare Plaintiff and his counsel from pursuing his demonstrably meritorious claims. *See* D.E. 15. As such, the skill level required to litigate this claim required a higher threshold of FLSA knowledge than other FLSA cases.

As to his customary fee, the undersigned typically bills anywhere between $300.00 per

11

hour to over $400.00 per hour on FLSA matters, depending on the market in which market a case is pending. In determining the reasonable hourly rate, courts look to the reasonable hourly rate for attorneys of a similar caliber practicing in the community. *See Watkins v. Fordice,* 7 F.3d 453, 458 (5th Cir.1993); *Tollett v. City of Kemah,* 285 F.3d 357, 368 (5th Cir.2002); *In re Enron Corp. Sec., Derivative & ERISA Litig.,* 586 F.Supp.2d 732, 756 (S.D.Tex.2008). When an attorney's requested rate is his customary billing rate and within the range of prevailing market rates, the court should consider the rate *prima facie* reasonable if not contested. *See Louisiana Power & Light,* 50 F.3d at 328. As noted below, case law regarding recent fee awards in FLSA cases generally and regarding Attorney Frisch specifically, supports a fee award at a rate of at least $300.00 hour.

>  B.   **Recent Fee Awards to Frisch in the Middle District of Florida and From This Court in FLSA Cases**

Most recently in this District, on a contested motion for fees, the undersigned's reasonable hourly rate has determined to be $325.00. *See Andrike v. Maple Way Community, Inc.,* 2013 WL 1881135, at *3 (M.D. Fla. May 3, 2013)(Bucklew, J.). Moreover, this Court has previously held, on numerous occasions, that attorney Andrew Frisch's reasonable hourly rate was $300.00 per hour. *See Marriott v. D & D Tractor and Truck Service, Inc.*, 2012 WL 2127731, at *3 (M.D. Fla. May 1, 2012)($300.00 reasonable for Andrew Frisch where his client prevailed in FLSA case); *Sanchez v. Statewide Mortgage Group, LLC, et al.,* CASE NO. 6:08-cv-00875-MSS-GJK, D.E. 83 (M.D. Fla. August 10, 2010)(finding the undersigned's reasonable hourly rate to be $300.00, following a hearing as to Plaintiff's damages and reasonable attorney's fees and costs). In so doing, the Court joined many courts within this judicial district that have previously found Mr. Frisch's reasonable hourly rate to

be $300.00.  *See, e.g., see Vance v. HFS–USA, Inc.*, 2009 WL 4730642, at *1 (M.D. Fla. Dec. 8, 2009)(Bucklew, J.); *see also Callow v. Arch Angel Welding and Masonry, Inc.*, 8:08-cv-1590-T-24 TBM (M.D. Fla. 2009)(Bucklew, J.); *see also Quinones v. JPMorgan Chase & Co.*, 2010 WL 376012 (M.D. Fla. 2010)(determining Frisch's reasonable hourly rate to be $300.00 per hour in an FLSA case); *Rastellini v. Amy Charles, Inc.*, 2009 WL 2579316, at *4 (M.D. Fla. Aug. 17, 2009)("the undersigned recommends that the Court find the rate requested [$300.00 per hour] for Mr. Frisch is reasonable.").  In line with the majority of recent decisions regarding Attorney Frisch's reasonable hourly rate, including this Court's prior decisions, the Court should award at least $300.00 per hour as Frisch's reasonable hourly rate.

    **C.**  **Recent Florida Surveys**

  Recent surveys confirm that an hourly rate of $300-325 per hour is reasonable for the undersigned in this case as well.  The Florida Bar's 2010 Economics and Law Office Management Survey's statistics revealed the average hourly rate for attorneys in Central Florida.  *See* http://www.floridabar.org (follow "Publications" hyperlink; then follow "Research" hyperlink; then follow "2010 Economics & Law Office Management Survey" hyperlink).  In 2010, greater than 60% of Florida attorneys billed more than $200 per hour, while more than 35% billed at more than $250 per hour.  *Id*. at 9-10.  In Central Florida, 59% of lawyers billed at more than $200.  *See id*.

  In *Shannon v. Saab Training USA, Inc.,* Case No.: 6:08-cv-803-Orl-19DAB, Doc. 45 at p. 4 (M.D. Fla. June 3, 2009), former Chief Judge Fawsett reviewed several surveys conducted by national publications and concluded that based on these national and local statistics, the practices in this District, and this Court's experience handling countless FLSA

13

cases, that the prevailing hourly rates in the Orlando market for attorneys are as follows:

| Years of Experience | Hourly Rates (APPROXIMATE) |
| --- | --- |
| Less than 3 | $125 to $175 |
| 3 to 5 | $175 to $225 |
| 5 to 7 | $225 to $275 |
| Over 7 years | $275 and up |

*Id*. at pp. 4-5. Based on the chart, a reasonable hourly rate for Plaintiffs' counsel would be ***at least*** $275.00 per hour.[8] The attorneys' fee in this case is based upon the lodestar prevailing rate as permitted by 29 U.S.C. §216(b). The attorneys' fee was not guaranteed, and was entirely contingent upon Plaintiffs prevailing in this matter, which they have done in full. Had Plaintiffs not prevailed, the undersigned would not have been entitled to recovery of any attorneys' fee nor compensation for costs incurred on Plaintiffs' behalf.

Moreover, in further support of the reasonableness of Attorney Frisch's requested hourly rate, attached hereto is the Expert Fee Opinion of Gregg Shavitz, an FLSA attorney who regularly practices in the Tampa area, as **EXHIBIT E**. Shavitz avers that Frisch's reasonable hourly rate in this case is $325.00 per hour. *See id., ¶* 11.

  D. <u>**Additional Johnson Factors**</u>.

    1. **Preclusion of Other Work.**

While the undersigned counsel is fortunate of having as much work as desired, the time spent litigating the case at hand precluded counsel from spending that time with other

---

[8] Plaintiffs' counsel was admitted to the Florida Bar in 2006. However, prior to that he has been continuously admitted (and practicing in good standing) in both the New York and New Jersey Bars, since January 2001. Additionally, since 2012, Plaintiff's undersigned counsel has been admitted (and practicing) in the State of Georgia.

clients. The fact that the parties worked expeditiously to resolve the case does not mean that there was less time spent on this matter, it simply indicates that the parties put more time into the case in a shorter time frame in order to reach a quick and fair resolution. Simply put, the results obtained on Plaintiffs' behalf could not have been better.

### 2.     Time Limitations.

Often, as in this case, the employee plaintiff is unemployed, and therefore, in desperate need of the past due compensation and liquidated damages for their support. Here, the Plaintiff was in such dire need of the money, because he is currently suffering from a termination illness, and lacks medical insurance. *See* Frisch Decl., ¶ 34. Therefore, filing and pursuing this matter in a timely manner was essential, and the need to settle his case at the earliest possible stage, while obtaining a reasonable recovery, was very real and immediate.

### 3.     The Amount Involved and the Results Obtained

With respect to the results obtained, Plaintiff's counsel was successful in obtaining (arguably) a full recovery of all wages originally sought by him. *See* Settlement Agreement, ¶ 3(a) ("The parties agree this is ***full compensation, without compromise*** to Plaintiff based on the overtime hours Plaintiff worked… if any."). Moreover, even to the extent the Defendants may argue that Andrike's recovery was less than the amount he initially claimed in his Declaration submitted in opposition to Defendants' Motion for Summary Judgment and/or Court Interrogatories, this is besides the point, because the Defendants refused to entertain any settlement discussions, until such time as the Court denied their three motions, notwithstanding Plaintiiff's numerous overtures regarding same. And, while Plaintiff ultimately did not recover

all of the damages he initially sought, to the extent he misunderstood the way in which Defendants paid him (delaying his overtime payments for time they paid him for by one pay period), same did not become clear until Plaintiff prepared his Answers to Court Interrogatories with the benefit of records exchanged by the Defendants per the Court's Order requiring same.

Further, as discussed above, because this is a case involving a remedial federal statute with a mandatory fee-shifting provision, the "amount involved" *Johnson* factor has limited, if any, relevance here. *See* M.H. Fox, *et al.*, Case Nos. 4:99-CV-1612-VEH, 4:06-CV-4676-VEH, and 4:06-CV-4677 (awarding $775,172.41 in three consolidated FLSA cases involving three plaintiffs who collectively recovered a total of $4,937.20 in wages and liquidated damages); s*ee also Perrin v. John B. Webb & Associates, Inc*., 2005 WL 2465022 (M.D. Fla. Oct. 6, 2005) (awarding $7,446.00 in fees in case where Plaintiff recovered $270 and recognizing that "in order for plaintiffs with minimal claims to obtain counsel, those counsel must be able to recover a reasonable fee for their time."). In the *M.H. Fox* cases cited above, Judge Hopkins reasoned that such award was appropriate in her opinion because "[the defendant] furiously litigated each of these cases, thereby causing a substantial increase in the hours reasonably spent on the matter," and that the plaintiffs should not be penalized for the defendant's extensive defense. *Id.,* Doc. 819 at 46-7.

As stated by the dissent in *Hensley,* 461 U.S. at 449, "no fee is reasonable unless it would be adequate to induce other attorneys to represent similarly situated clients seeking relief comparable to that obtained in the case at hand." Therefore, if the Court focuses on the amount in controversy, plaintiffs' counsel will be discouraged from vigorously prosecuting cases when confronted with opposition from wealthy employers determined to win the litigation at any cost in order to make examples of employees attempting to enforce their federal

statutory rights. The foreseeable result of the Court adopting such an analysis will result in plaintiffs' counsels refusing to represent FLSA claimants against wealthy employers. Therefore, Plaintiff respectfully suggests that, in this case, the Court should focus more on the results obtained rather than the amount in controversy.

## CONCLUSION

Plaintiff recovered substantial unpaid wages in this case (and an additional amount as liquidated damages). Thus, Plaintiff's undersigned counsel obtained a very good result for his client. Such recovery was made, despite Defendants' efforts to erect significant barriers to same, by virtue of their aggressive motion practice, and refusal to attempt meaningful settlement negotiations at the outset of the case.

During the pendency of the case however, Plaintiff's counsel protected his rights and ensured that he would receive an adequate recovery under the law. Indeed, it was only as a result of Plaintiff's counsel's zealous efforts that Plaintiff's achieved the result obtained. Respectfully, Plaintiff's counsel submits that he should be reimbursed for his reasonable attorneys' fees for so doing.

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 3.01(g), Plaintiff's undersigned counsel certifies that he conferred with Defendants' counsel, prior to filing the instant Motion, and is authorized to represent that Defendants oppose the relief sought in this motion.

Dated: July 29, 2013

                                             Respectfully submitted,

                                             **/s/ ANDREW FRISCH**
                                             Andrew Frisch, Esq.
                                             FL Bar No.: 27777

>Trial Counsel for Plaintiff
>MORGAN & MORGAN
>600 N. Pine Island Road, Suite 400
>Plantation, FL 33324
>Tel: 954-318-0268
>Fax: 954-333-3515
>E-mail: afrisch@forthepeople.com
>
>*Trial Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court, this 29th day of July 2013, by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

>**/s/ ANDREW FRISCH**
>Andrew Frisch